**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| _____ | ) |
| JOSE REYES, | ) |
| 18351 Lost Knife Cir. Apt. 201 | ) |
| Montgomery Village, MD 20886 | ) |
|                 Plaintiff, | ) |
|    v. | ) |
| | ) |
| SOUTHLAND CONCRETE CORP., | ) |
|    and | ) |
| SOUTHLAND CONCRETE ESOP | ) |
| COMMITTEE, | ) |
| 44330 Mercure Circle, Suite 100 | ) |
| Dulles, Virginia 20166 | ) |
|               Defendants. | ) |
| _____ | ) |

**COMPLAINT**

This Complaint concerns the misconduct Southland Concrete and the Southland Concrete Employee Stock Ownership Plan ("ESOP" or "PLAN") in the administration of the Southland Concrete ESOP, specifically their violation of the fiduciary standards required by the Employee Retirement Income Security Act ("ERISA") and its accompanying regulations. This Complaint also addresses Defendants' violation of ERISA's disclosure requirements.

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over the subject matter of this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331.

2. Venue is proper in this Court under 29 U.S.C. § 1132(e) because the breach occurred in this district.

**THE PARTIES**

3. Plaintiff Jose Reyes ("Reyes") resides in Montgomery Village, Maryland.

4.  Reyes worked for Southland Concrete from August 2001 to April 2006 in both Maryland and Virginia.

5.  Southland Concrete sponsors the Employee Stock Ownership Plan (ESOP); an "employee benefit plan" as defined in ERISA § 3(3), 29 U.S.C. §1002(3), and an "employee pension benefit plan" as defined in ERISA § 3(2)(A), 29 U.S.C. §1002(2)(A).

6.  Southland Concrete is the "plan sponsor" of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. §1002(16)(B).

7.  As the plan sponsor, Southland Concrete is a "fiduciary" for the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. §1002(21)(A).

8.  The Southland Concrete ESOP Committee is the Plan "Administrator" within the meaning of ERISA § 3(16), 29 U.S.C. § 1102(16).

9.  The Southland Concrete ESOP Committee is a "fiduciary" for the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. §1002(21)(A), and the "named fiduciary" within the meaning of ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2).

## FACTUAL ALLEGATIONS

10. Mr. Reyes entered the ESOP plan at its inception on January 1, 2000.

11. On information, an Acquisition Loan was secured by Southland Concrete to purchase shares of employee stock. According to representatives of the Defendants, the term of the Acquisition Loan was for 2000 through 2016.

12. On April 4, 2006, Plaintiff terminated employment from Southland Concrete. He was 80% vested in the ESOP Plan at the time of his termination.

13. In April 2006, when Plaintiff terminated employment, a representative of Southland

Concrete's Human Resources Department informed him that he would receive the funds he was entitled to under the plan three years after his termination date.

14. On December 11, 2006, Denise Lade of the Southland Concrete ESOP Committee, and the ESOP Communications Committee sent a memorandum regarding the ESOP to previous Southland Concrete employees including Plaintiff, which stated that for vested accounts with balances over $10,000, distributions would begin in the second year after termination, but not before the bank loans used to fund the shares are paid off, which was estimated to be around 2016; but no later than reaching age 65.

15. Ms. Lade's memorandum further stated that distributions would begin as soon as administratively possible in the second year after the year of termination when the new statements arrive, and advising that for employees terminated in 2005 that payment would be made in 2007 after the 2006 statements arrive; and, for those employees terminated in 2006, employees would receive payout in 2009 after the 2007 statements arrive.

16. Reyes received the same letter from Denise Lade and the ESOP Communications Committee dated October 22, 2007, and again on October 29, 2008, and on November 4, 2009.

17. The Plan Document does not reflect these terms, and there was no SMM issued to Plaintiff detailing that these terms were in effect.

18. Plaintiff's account never fell below $10,000 in any of these years.

19. Section 5.1 of the Plan states that "If a Participant terminates service, and the value of the Participant's Vested Account Balance derived from Employer and Employee contributions is not greater than $5,000, the Participant will receive a distribution of the value of the entire Vested portion of such Account balance. If the value of a Participant's Vested Account

3

Balance is zero, the Participant shall be deemed to have received a distribution of such Vested Account Balance.

20. Section 5.9 of the plan states that "If the value of a Participant's Vested Account Balance exceeds $5,000, and the Account balance is immediately distributable, the Participant . . . . must consent to any distribution of such Account balance."

21. On information and belief, other participants who separated service on or about the same time as Plaintiff received distributions of greater than $5,000 before the Acquisition Loan was paid off without satisfying one of the requirements of the Plan for early distribution.

22. Section 5.13 of the Plan, "Method of Payment," states that "[i]f a Participant separates from service and his or her Account balance exceeds $5,000, ***the Committee shall determine the fair market value of such Participant's Vested Account and the number of whole and fractional shares of Company Stock allocated to such Participant's Company Stock Account as of the next Valuation Date following the Participant's separation from service pursuant to Section 4.11; thereafter, the value of the Participant's Account shall be segregated from the rest of the Trust Fund***. The Committee shall direct the Trustee to distribute the value of the Participant's Vested Account Balance in cash within the time specified for distribution in this Article V." (Emphasis added).

23. Under Article 1 of the Plan, "Valuation Date" is a defined term.  The Plan states that "Valuation Date means the last day of the Plan Year, in addition to any other date specifically designated by the Committee.  The Trustee shall determine the fair market value of trust assets on each Valuation Date.

24. On information, the valuation date following Plaintiff's termination of employment was

4

December 31, 2006.

25. In October 2007, Plaintiff received a memorandum dated October 10, 2007 in which Defendant represented that the company anticipated "breaking the $100,000,000 mark in revenues". . . . and, "fully expected continued growth in the share value."  Further, the company represented that "[i]t was exciting to see the ESOP working as designed."  Finally, the Defendant stated "[w]e will continue '***Setting the Pace***' all the way into the retirement we are currently securing for ourselves."

26. Accompanying that memorandum was Plaintiff's Statements of Account for the Plan Year ended December 31, 2006, which reflected that Plaintiff had both a Company Stock Account, in which company stock allocated to the Plaintiff was recorded, along with any earnings, gains, losses and expenses; and, an account entitled Other Investments Account reflecting investments of the Plan other than in Company Stock, attributable to Employer Contributions to the Plan after the Effective date, along with any earnings, gains, losses and expenses.

27. The Statement of Account for Plan Year ended December 31, 2006, reflected the value of Plaintiff's account to be $10,978.75.  The bottom of the statement reflected the Fair Market Value of Company Stock as $5.51 per share.

21. Section 5.10, "Commencement of Benefits" states that "[u]nless the Participant elects otherwise, distribution of benefits will begin no later than the 60th day after the latest of the close of the Plan Year in which: (a) the Participant attains age 65 (or Normal Retirement Age, if earlier); (b) occurs the 10th anniversary of the year in which the Participant commenced participation in the Plan; or (c) the Participant terminates service with the Employer and all Affiliates. Notwithstanding the foregoing, the failure of a Participant,

5

Spouse or Beneficiary to consent to a distribution while a benefit is immediately distributable, within the meaning of Section 5.9 of the Plan, shall be deemed to be an election to defer commencement of payment of any benefit sufficient to satisfy this Section."

22. Section 5.11, "Required Distributions" states that "[a]ll distributions shall be determined and made in accordance with the proposed Regulations promulgated under section 40l(a)(9) of the Code. . . .

23. Section 5.15, "Limitation on Distribution Payments," states that "[e]xcept as required under Section 5.11 and section 40 I (a)(9) of the Code, the Trustee shall not distribute the portion of the Participant's Account attributable to the shares of the Company Stock acquired with the proceeds of an Acquisition Loan until the close of the Plan Year in which such loan is repaid in full."

24. In June 2009, Plaintiff, acting on the information he had received in 2006, contacted Human Resources to request his pension benefit.  Human resources informed him that the policies for the plan had changed, and they estimated that he would receive his benefits in 2016.

25. On June 22, 2009, Plaintiff wrote to Denise Lade of the Southland Concrete ESOP committee, requesting information about why his request for distribution of his benefits had been denied, and requesting "all plan documents and all plan amendments," and his account information.

26. The Plan issued Plaintiff a Statement of Accounts for the Plan Year ending December 31, 2007 reflecting that he was vested in 80% of his benefits. The market value of the accounts was $16,089.54, of which the value of Plaintiff's vested percentage was $12,871.63. The Fair Market Value of Company Stock as $6.46 per share.

27. Under the Plan Section 4.13, "As of the end of any Plan Year in which a Participant who has terminated employment with the Employers ("Inactive Participant") has shares of Company Stock in his ESOP Stock Account, after all allocations of Employer Contributions, Forfeitures, Dividends, and earnings have been made, the Administrator shall exchange any cash or other liquid assets held in the ESOP Cash Accounts of Participants who are actively employed by the Employers ("Active Participants") for the shares of Company Stock held in the Inactive Participant's ESOP Stock Accounts, at an exchange rate determined based on the contemporaneous appraised fair market value of Company Stock."

28. According to Plaintiff's 2007 Statement of Accounts, Plaintiff had 1,386.9759 of his shares removed from the Company Stock Account.  The 2007 Statement of Accounts also reflected other investments valued at 8,959 shares added to the Other Investments Account.

29. There was no notice to Plaintiff about the reduction in the amount of shares allocated to his Company Stock Account, or notice of whether the cash value of that stock was being held for his benefit in accordance with Section 4.13 of the Plan.

30. On September 23, 2009, Plaintiff's counsel wrote to Southland Concrete's ESOP Committee, requesting any and all documents relating to Mr. Reyes' status under the ESOP Plan pursuant to ERISA Section 104(b)(4).

31. On October 22, 2009, Denise Lade sent Plaintiff's counsel a letter enclosing the most recent SPD. In this letter, Lade stated that distribution of Mr. Reyes' account could not occur until the Acquisition Loan used to purchase his shares was paid in full. She estimated the loan would be paid off in 2012.

32. Prior to October 22, 2009, Southland Concrete had not conveyed to Mr. Reyes that all of his

shares had been purchased with the Acquisition Loan.

33. Plaintiff's 2008 Statement of Accounts for the year ending December 31, 2008 reflects 2,490.6405 shares in the Company Stock Account and nothing in the Other Investments Account.  Plaintiff's Statement of Account reflected that the market value of his shares of Company Stock was $18,580.18 and the value of his vested percentage was $14,864.14.

34. There is no notice to Plaintiff detailing why he had a change in the shares in his two accounts.

35. On October 29, 2010, Southland Concrete sent a letter to Plaintiff's counsel, enclosing a copy of the ESOP Plan and Mr. Reyes' 2009 statement of accounts. Southland Concrete stated that Reyes was not eligible for distribution until the Acquisition Loan used to purchase all shares had been paid off, and estimated that the Acquisition Loan would be repaid in 2011.

36. Plaintiff's 2009 Statement of Accounts for the year ending December 31, 2009 states that Plaintiff had 2,490.6405 shares of Company Stock and nothing in his Other Investments Account. The market value of the Company Stock was listed as $17,559.01, and Plaintiff's vested percentage was valued at $14,047.21.

37. On information, the ESOP Communications Committee sent a letter to former employees on September 10, 2010, stating that "Former employees with vested ESOP accounts of less than $10,000 can elect to receive cash for their ESOP account." The letter contained an election form, and told participants, "Please complete the following and return to Southland Concrete as soon as possible but no later than November 30, 2010. If your election form is not received by this date, no payment can be made for another 12 months.

8

38. In 2010, the value of Southland stock fell from $7.05 per share to $2.16 per share.

39. Plaintiff's 2010 Statement of Accounts for the year ending December 31, 2010 states that Plaintiff had 2,490.6405 shares in the Company Stock Account and no shares in the Other Investments Account. The market value of the Company Stock was listed as $5,379.78, and Plaintiff's vested percentage was $4,303.82.

40. Plaintiff having received no information regarding the repayment of the Acquisition Loan in 2011 or 2012, on July 11, 2013, Plaintiff's counsel wrote to the Southland Concrete ESOP Plan to formally request distribution of his benefits.

41. On July 17, 2013, Southland Concrete wrote to Plaintiff's counsel saying that Plaintiff became eligible for a distribution in 2012 after the Acquisition Loan was repaid in full. The correspondence states that Southland Concrete's Third Party Administrator, Blue Ridge ESOP send a letter to Mr. Reyes on October 26, 2012, notifying him of his eligibility for a distribution from the ESOP. The correspondence further stated that "he was required to fill out the paperwork and return it to Blue Ridge ESOP by November 27, 2012."

42. This was the first notice to Plaintiff that the Acquisition Loan had been paid She said they did not receive his paperwork within their deadline and that all former employees know they need to update their address, so if the address was incorrect either Plaintiff's counsel or Plaintiff needed to notify Southland Concrete.

43. The letter was sent to an address that Plaintiff had not been living at for several years.

44. Defendant had been on notice of Plaintiff's current address since a request for an update of his records in June 2009, when he provided his address of 18351 Lost Knife Cir. Apt. 201, Montgomery Village, MD 20886

45. Defendant had been on notice of Plaintiff being represented by counsel and had counsel's address since 2010.

46. Southland Concrete did not contact Plaintiff's counsel, despite knowing he had retained counsel in connection with his securing his retirement benefits, and understanding his rights under the plan.

47. Southland Concrete provided information that as of December 31, 2011, the total vested balance in Plaintiff's account was $2,936.94 and he was currently eligible to receive this amount.

48. On information and belief, Plaintiff asserts that this was the Valuation Date for his benefit was no later than the Plan Year following the Plan Year in which Plaintiff separated service, or December 31, 2007.

49. On August 23, 2013, Plaintiff's counsel wrote to Southland Concrete to request any and all information about the ESOP's Acquisition Loan, including the date the loan was issued, the schedule for paying off the loan, valuation of the loan, and any Board meeting minutes regarding the loan for the entire duration of the loan. Plaintiff's counsel also requested information about whether Mr. Reyes' ESOP shares were held in the Inactive Participant's ESOP stock account under Section 4.13 of the Plan.

50. To date Plaintiff has not received any information regarding the Acquisition Loan.

51. Plaintiff suffered financial losses due to the failure of Plan fiduciaries to segregate the value of Company Stock in accordance with Section 4.13 of the Plan.

52. Defendants did not provide Plaintiff notice that the loan had been paid, even though Plaintiff had inquired multiple times about his benefits.

10

**CLAIM ONE**
**BREACH OF FIDUCIARY DUTY—FAILURE TO ADMINISTER THE PLAN IN**
**ACCORDANCE WITH ITS TERMS--SEEKING EQUITABLE RELIEF UNDER ERISA**
**SECTION 502(a)(3)**

53. Plaintiff restates Paragraphs 1 through 53, and incorporates them herein.

54. Pursuant to ERISA §§ 3(21)(A), 29 U.S.C. §§ 1002(21)(A), Defendant Southland Concrete

ESOP Committee was a fiduciary to the Plan.

55. ERISA requires that a fiduciary act "with the care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent man acting in a like capacity and familiar with

such matters would use in the conduct of an enterprise of a like character and with like aims."

29 U.S.C. § 1104(a)(1)(B).

56. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), a participant or beneficiary can bring

an action "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to

enforce any provisions of this subchapter or the terms of the plan."

57. Failure to administer the Plan by its terms constitutes a breach of fiduciary duty under

ERISA §404, 29 U.S.C. §1104.

58. Upon information, the Plan paid participants other than Plaintiff who were vested in greater

than $5,000 of benefits and did not postpone their distribution until after the Acquisition

Loan was paid off.

59. Upon information, Defendant Southland Concrete ESOP Committee offered and paid

participants with less than $10,000 distributions of their benefits within three years of

termination in contravention of the Plan's language in Sections 5.1 and 5.9 which states that

only individuals with balances of less than $5,000 were eligible for early distributions before

11

the Acquisition Loan had been paid off.

60. Under Plan Section 4.13, the shares of Company Stock of a Participant who has terminated employment must be exchanged cash or liquid assets for the Participant's shares of company stock, "to assure that the Accounts of Inactive Participants are invested in assets other than Company Stock to the maximum extent possible within the assets available to the Trust."

61. Defendant Southland Concrete ESOP Committee did not place Plaintiff's shares in this account and he suffered a financial loss due to their failure to invest his shares in other stock.

62. Under Section 5.13 of the Plan, because Plaintiff separated from service with a balance of greater than $5,000, the value of his account should have been segregated from the rest of the Trust Fund.

63. Because all of Plaintiff's stock remained in company stock and was not separated pursuant to the Plan he suffered a financial loss.

64. Failure to administer the Plan by its terms is a breach of fiduciary duty under ERISA, and such breach was the cause of losses Plaintiff suffered.

65. On information, Plaintiff was treated differently from other similarly situated participants whose benefits were paid before the Company Stock fell in value, despite there being no plan provision supporting such distribution.

66. If the Defendant had followed the terms of the Plan, Plaintiff would not have suffered as loss in his accrued benefits because they would have been properly segregated from the ESOP Company Stock Account.

67. Due to Defendant's breach of fiduciary duty, Plaintiff is entitled to appropriate equitable relief, including but not limited to surcharge, pursuant to ERISA § 502(a)(3).

**CLAIM TWO**
**BREACH OF FIDUCIARY DUTY—FAILURE TO ACT PRUDENTLY AND IN THE**
**INTEREST OF PARTICIPANTS--SEEKING EQUITABLE RELIEF UNDER ERISA**
**SECTION 502(a)(3)**

68. Plaintiff restates Paragraphs 1 through 53, and incorporates them herein.

69. The Plan and Trust were established on January 1, 2000.

70. Southland Concrete used the Acquisition Loan to purchase all of the shares in the ESOP.

    Accordingly, all participants' shares in the ESOP were subject to Section 5.15 of the Plan,

    delaying distribution until the Acquisition Loan had been paid off with some narrow

    exceptions required by the Internal Revenue Code and Plan Section 5.11.

71. The term of the Acquisition Loan was for 2000 through 2016, therefore under its terms

    Participants may have waited as long as 16 years to be eligible for a distribution of their

    benefits.

72. A loan must be primarily in the interest of participants and their beneficiaries under 26

    C.F.R. 54.4975-7. This delay in the ability for participants to receive their benefits was not in

    their best interest, and a reasonably prudent person would not have chosen a similar loan for

    all of the ESOP shares.

73. To take out the loan knowing that participants would not get benefits for many years was

    unreasonable and not in the best interest of plan participants.

74. Further, Defendant never timely notified with Plan Participants regarding the date the

    Acquisition Loan was anticipated to be paid when the original dates changed.

75. According to Defendant Southland Concrete, the Acquisition Loan was paid off in 2012.

    Therefore, under this Plan, beneficiaries who did not fit the narrow distribution exceptions

required by the Plan and the Internal Revenue Code were unable to receive any benefits for

12 years.

76. Consequently, Southland Concrete and the Plan breached their fiduciary duties under ERISA

§404, 29 U.S.C. §1104 in establishing the Plan.


## CLAIM THREE
## FAILURE TO COMPLY WITH ERISA'S DISCLOSURE REQUIREMENTS—SEEKING RELIEF UNDER ERISA SECTION 502(C)

77. Plaintiff restates Paragraphs 1 through 53, and incorporates them herein.

78. ERISA requires that the Plan Administrator "shall, upon written request of any participant or

beneficiary, furnish a copy of the latest updated summary plan description, plan description,

and the latest annual report, any terminal report, the bargaining agreement, trust agreement,

contract, or *other instruments under which the plan is established or operated*." ERISA

Section 104(b)(1)(B), 29 U.S.C. §1024(b)(1)(B).

79. Plaintiff was entitled to information about the Acquisition Loan under ERISA, and its

accompanying regulations.

80. Defendants have failed to provide any documents relating to the Acquisition Loan that they

allege an adequate explanation for failure to distribute Plaintiff's benefits.

81. Defendants have failed to provide this information within the 30 days of Plaintiff's written

request, as required by ERISA.

82. The failure to provide information required by ERISA constitutes a breach of fiduciary duty.

14

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court:

a.   Declare that Defendant ESOP Committee failure to provide information regarding the Acquisition Loan does not comply with ERISA's disclosure requirements.

b.   Declare that Defendant ESOP Committee breached their fiduciary duties by failing to provide Plaintiff with the required documents mandated by ERISA.

c.   Declare that Defendant ESOP Committee failed to comply with their fiduciary duties in the administration of the Plan by imprudently designing it and by failing to administer it pursuant to its terms.

d.   Declare Defendant ESOP Committee to have breached their fiduciary duty by failing to timely segregate Plaintiff's vested value in company stock to ensure as required under the terms of the Plan.

e.   Declare that Defendants failed to properly select and monitor its Third Party Administrator that failed to timely notice Plaintiff that the Acquisition Loan had been paid in 2012.

f.   Declare Defendants to have failed to provide its Third Party Administrator with the Plaintiff proper address so that he would receive timely notice of the Acquisition Loan being paid in 2012.

g.   Order ESOP Committee to reinstate Plaintiff's vested account balance consistent with the terms of Section 4.13 which would have required the value of Plaintiff's account to be segregated at the time of the Plan Valuation following his separation of service; or

h.   Order that the Defendant ESOP Committee pay equitable relief in the form of a surcharge

for their failure to administer the Plan according to its terms.

i.   Award Plaintiff interest for the delay in the distribution of his benefits.

j.   Award such other legal, equitable and remedial relief as the Court deems appropriate.

k.   Order the Defendants to pay attorneys' fees and costs of this action.

DATED:  October 29, 2013

Respectfully submitted,

/s/Denise M. Clark
Denise M. Clark (17385)
Clark Law Group, PLLC
1250 Connecticut Ave, N.W., Ste, 200
Washington, D.C. 20036
(P)(202) 293-0015; (F)(202)293-0115
dmclark@benefitcounsel.com